IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JANET V.,

        Plaintiff,        Civil Action No.
                                1:19-CV-0466 (DEP)

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW FIRM        JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Rd.
Newburgh, NY 12550

FOR DEFENDANT

HON. GRANT C. JAQUITH         KEVIN PARRINGTON, ESQ.
United States Attorney          Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on May 6, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_/s/ David E. Peebles_
David E. Peebles
U.S. Magistrate Judge

Dated:   May 7, 2020
         Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------x
JANET V.,

                        Plaintiff,

vs.                           1:19-CV-466

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                        Defendant.
----------------------------------------x
```

Transcript of a **Decision** held during a

Telephone Conference on May 6, 2020, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

A P P E A R A N C E S

(By Telephone)

```
For Plaintiff:     DENNIS KENNY LAW FIRM
                   Attorneys at Law
                   288 North Plank Road
                   Newburgh, New York  12550
                     BY:  JOSEPHINE GOTTESMAN, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   Office of the General Counsel
                   JFK Federal Building, Room 625
                   15 New Sudbury Street
                   Boston, Massachusetts 02203
                     BY:  KEVIN PARRINGTON, ESQ.
```

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1              (The Court and Counsel present by telephone.)

2              THE COURT:  Thank you.  Let me begin by commending

3     counsel for excellent written and oral presentations, I

4     enjoyed working with you on this case.

5              Plaintiff has commenced this proceeding pursuant to

6     42 United States Code Sections 405(g) and 1383(c)(3) to

7     challenge a determination by the Commissioner of Social

8     Security the plaintiff was not disabled at the relevant times

9     and therefore ineligible for the benefits for which she

10    applied.

11             The background concerning this case is as follows:

12    Plaintiff was born in June of 1961.  She is currently almost

13    59 years of age.  She was 52 years old at the time of the

14    alleged onset of her disability in December 2013.  Plaintiff

15    resides in Marlboro, New York in a two-family house with

16    children who at the time of the hearing of this matter were

17    19 and 21 years of age and were full-time college students.

18    She also has a rent-paying roommate in the home.  She stands

19    5 foot 2 inches in height.  Plaintiff has weighed at various

20    times anywhere between 198 pounds, at the time of the hearing

21    in August of 2017, to 243 pounds in April of 2015.  Plaintiff

22    has a high school diploma and one year of college experience.

23    Plaintiff has a driver's license but testified that she does

24    not drive.

25             In terms of work, plaintiff stopped working in

1   December of 2013 due to anxiety.  Prior to that time, she was
2   employed as a production manager between July 1995 and
3   January 2010.  She left that position when she was laid off.
4   She was an administrative assistant in a pool and patio store
5   from May of 2012 to August of 2012, and a director of
6   production in a manufacturing setting from August 2013 to
7   December 2013.
8            At page 49, plaintiff testified that she is unable
9   to work because she cannot concentrate, she cannot remember
10  things, she cannot finish tasks.  She suffers from dizziness
11  and panic attacks.  She cannot walk, cannot stand for long,
12  cannot climb stairs, cannot lift.
13           Physically, plaintiff suffers from coronary artery
14  disease, specifically coronary atherosclerosis of the native
15  coronary artery, as well as GERD, chronic anemia, and type 2
16  diabetes.  The record is somewhat vague as to when it
17  occurred, but plaintiff suffered from a myocardial infarction
18  sometime between 2010 and 2012.  On April 30, 2015, plaintiff
19  was hospitalized and had a stent placed.  It was referred to
20  as a double vessel coronary artery disease that she was
21  suffering from.  She complained of chest pains the day before
22  on April 29, which, interestingly, is the day she underwent
23  the physical and psychiatric consultative examinations.
24           Mentally, plaintiff suffers from bipolar disorder,
25  a generalized anxiety disorder, social anxiety, and rule out

1    panic disorder.

2            In terms of her treatment providers, she treated as
3    a -- with a general practitioner Dr. Anthony Basciano, a
4    general practitioner, beginning in or about October 2016.
5    Her cardiology needs have been attended to by Dr. Glenn
6    Boyar.  She also treats with Dr. Margaret Apedo, an
7    endocrinologist.

8            In terms of her mental health, plaintiff treated
9    with Dr. Richard Altesman from 2014 to 2016, and beginning in
10   2017 with Dr. Sukhiminder Singh.  She was also consultatively
11   examined physically by Dr. Carol McLean Long, and for
12   psychiatric evaluation by Dr. Melissa Antiaris.  Both of
13   those occurred, as I indicated, on April 29, 2015.

14           Plaintiff has been prescribed several medications
15   over time including atorvastatin, Brintellix, gabapentin,
16   losartan, metoprolol, omeprazole, Metformin, Zoloft, a trial
17   of Latuda, and at one point, Duloxetine which apparently
18   plaintiff could not tolerate.

19           Plaintiff has a fairly wide range of activities of
20   daily living.  She watches television, reads, she can dress,
21   bathe, groom herself, she listens to music.  The record is
22   equivocal on cooking.  She stated that she is unable to cook,
23   do laundry, shop, or take any trips at the hearing; however,
24   at pages 264 and 269 plaintiff stated that she can cook,
25   clean, do laundry, and can shop.  Plaintiff smokes and it

1  appears that she smoked up to one pack of cigarettes per day
2  for 30 years, that appears at 281, 256, and 258 of the
3  administrative transcript.  She apparently cut down at one
4  point to one half-pack per day, in 2016, that's at 312, and
5  three-quarters of a pack per day at 355.  She has also smoked
6  marijuana most of her life, according to 355 and 423 of the
7  administrative transcript.
8  　　　　　Procedurally, plaintiff applied for Title II Social
9  Security Disability benefits on April 2, 2015.  She
10 subsequently applied for Supplemental Security Income
11 payments on October 25, 2016 pursuant to Title XVI of the
12 Social Security Act.  In both of those applications, she
13 alleged an onset date of December 1, 2013.  At page 188, she
14 claimed disability based on anxiety/depression, bipolar
15 disorder, high blood pressure, and heart attack.
16 　　　　　A hearing was conducted on August 23, 2017 by
17 Administrative Law Judge Sharda Singh.  ALJ Singh issued a
18 decision on April 20, 2018 finding that plaintiff was not
19 disabled at the relevant times and therefore ineligible for
20 the benefits sought.  That became a final determination of
21 the agency on February 20, 2019, when the Social Security
22 Administration Appeals Council denied plaintiff's application
23 for review.  This action was commenced on April 20, 2019, and
24 is therefore timely.
25 　　　　　In the decision, Administrative Law Judge Singh

1   applied the familiar five-step test for determining
2   disability.  The ALJ first noted that plaintiff's insured
3   status ended on September 30, 2017.  The ALJ then at step one
4   concluded that plaintiff had not engaged in substantial
5   gainful activity since December 1, 2013.
6           Proceeding to step two, the administrative law
7   judge concluded that plaintiff does suffer from severe
8   impairments that impose more than minimal limitations on
9   ability to perform work functions, including coronary artery
10  disease, hypertension, diabetes mellitus, obesity,
11  generalized anxiety disorder, panic disorder, and bipolar
12  disorder.  In doing that, the administrative law judge
13  rejected cannabis use disorder and dyslipidemia as not
14  severe.
15          At step three the administrative law judge
16  concluded that plaintiff's conditions do not meet or
17  medically equal any of the listed presumptively disabling
18  conditions set forth in the Commissioner's regulations,
19  specifically considering Listings 4.00, 4.04, and
20  12.04/12.06.  The administrative law judge also considered
21  plaintiff's diabetes in accordance with Social Security
22  Ruling 14-2p, and obesity pursuant to SSR 02-1p.
23          The administrative law judge next concluded that
24  plaintiff retains the residual functional capacity, or RFC,
25  to perform medium work except limited to understanding,

1   remembering, and carrying out simple, repetitive, noncomplex
2   tasks with occasional contact with supervisors, coworkers,
3   and the general public.
4         At step four, applying that RFC, the administrative
5   law judge concluded that plaintiff is incapable of performing
6   her past relevant work in light of its demands and
7   specifically it is characterized as SVP 8.
8         At step five, the administrative law judge noted
9   first that if the Medical-Vocational Guidelines, or the
10  so-called Grids, were applied and plaintiff were capable of
11  performing a full range of medium work, she'd be deemed not
12  disabled under Rules, Grid Rules 203.22 and 203.15.
13        Relying upon the testimony of the vocational expert
14  in light of the additional nonexertional limitations set
15  forth in the RFC, the administrative law judge concluded that
16  plaintiff is capable of performing work in the national
17  economy that is available, including as a hand packer, a
18  hospital cleaner, and a sandwich maker.
19        As you know, the court's task is limited and the
20  standard that must be applied is extremely deferential.  The
21  court must determine whether correct legal principles were
22  applied, and whether the resulting determination and the
23  findings of fact are supported by substantial evidence, which
24  is defined as such relevant evidence as a reasonable mind
25  might accept as adequate to support a conclusion.  The Second

1    Circuit Court of Appeals noted in *Brault v. Social Security*
2    *Administration*, 683 F.3d 443, from 2012, that the standard to
3    be applied is extremely deferential.  It is even more
4    stringent than the clearly erroneous standard.  In *Brault*,
5    the Second Circuit went on to note that under that standard,
6    the court may reject facts found by an administrative law
7    judge only if a reasonable fact finder would have to conclude
8    otherwise.
9            In this case, plaintiff has raised three main
10   contentions.  First, she challenges the administrative law
11   judge's weighing of the medical opinions and specifically
12   those of Dr. Singh, Dr. McLean Long, and Dr. Antiaris.  The
13   administrative law judge RFC finding is also challenged as
14   not supported by substantial evidence, and the issue is
15   raised that there is a gap in the record presented by
16   rejection of Dr. Singh's opinion, and also, part and parcel
17   of that is the alleged inconsistency with Dr. McLean Long's
18   opinion.
19           Turning first to the weight of medical evidence,
20   generally speaking, under *Veino*, it is the prerogative of the
21   administrative law judge to weigh medical opinions and
22   evidence in the record.
23           Turning first to Dr. Antiaris, Dr. Antiaris
24   examined the plaintiff and issued the following medical
25   source statement at page 265 of the administrative

1   transcript.  The -- Dr. Antiaris found no limitations in the
2   claimant's ability to follow and understand simple directions
3   and instructions or perform simple tasks independently.  She
4   is mildly limited in her ability to maintain attention and
5   concentration, there are no limitations in the claimant's
6   ability to maintain a regular schedule, learn new tasks,
7   perform complex tasks independently, make appropriate
8   decisions, or relate adequately to others.  She is moderately
9   limited in her ability to appropriately deal with stress,
10  difficulties are caused by lack of motivation.  On page 264,
11  Dr. Antiaris found that plaintiff's thought processes were
12  coherent and goal directed with no evidence of
13  hallucinations, delusions of paranoia.  She went on to find
14  that in the area of attention and concentration, plaintiff
15  was mildly impaired due to concentration difficulties.
16  Recent and remote memory skills were found to be intact,
17  cognitive functioning was judged to be in the average range,
18  insight fair and judgment fair.
19          The administrative law judge carefully, at pages 21
20  and 22, examined the opinion of Dr. Antiaris.  The
21  administrative law judge did acknowledge the moderate
22  limitation on stress, and I find that residual functional
23  capacity in that arena is well supported and accounted for in
24  the residual functional capacity.  The Commissioner has cited
25  *Jackson v. Commissioner of Social Security* at 2019 WL

1   4926434, it's a decision from the Western District of
2   New York.  In that case Magistrate Judge Michael J. Roemer
3   noted that where an ALJ concluded that plaintiff was limited
4   to simple routine repetitive tasks and that she was capable
5   of performing unskilled work, that is sufficient to account
6   for a moderate limitation in dealing with stress.
7              Turning to Dr. Ferrin, Dr. Ferrin, a nonexamining
8   consultant, on June 30, 2015 issued the following MRFC,
9   mental residential functional capacity, opinion.  Claimant
10  has severe impairment and despite some limitations is able to
11  follow ordinary routine, socialize with others, and adapt to
12  changes in workplace.  The administrative law judge discussed
13  Dr. Ferrin's opinion at page 22.  It was accepted, although
14  with additional limitations, and those are supported by
15  substantial evidence.  I note that Dr. Ferrin's opinions are
16  supported by the treatment notes of Dr. Singh as well as
17  Licensed Clinical Social Worker Greddy Abraham and
18  Dr. Richard Altesman.  As I indicated previously, it is for
19  the administrative law judge to weigh medical opinions.  I
20  think it was properly weighed in this case.
21             The argument with regard to passage of time I
22  understand, and for practical reasons in many of these cases
23  there is a fairly substantial period of time that passes
24  between a consultative exam and the time of an administrative
25  law judge's decision.  That alone, however, does not

1   undermine the usefulness and the reliance upon such a
2   consultative examination, particularly as in this case where
3   notes do not reflect any significant deterioration in
4   condition.
5           In terms of Dr. Singh, Dr. Singh is of course in a
6   different category. He was treated by the administrative law
7   judge as a treating source. His opinions were discussed in
8   detail at pages 21 through 23 of the administrative
9   transcript. As a treating source under the regulations that
10  were in effect at the time, he is -- his opinions were
11  entitled to considerable deference unless not consistent with
12  other substantial evidence. And specifically, such opinions
13  are not controlling if they are contrary to other substantial
14  evidence in the record, including opinions of other medical
15  experts. *Halloran v. Barnhart*, 362 F.3d 28, pin cite 32 from
16  the Second Circuit 2004. If there is contradictory medical
17  evidence in the record, the resolution of such a conflict is
18  entrusted to the Commissioner. *Burgess v. Astrue*, 537 F.3d
19  117 at 128 from Second Circuit 2018 -- I'm sorry, 2008.
20  Obviously, if a treating source's opinions are rejected,
21  explanation must be made and it must be supported by
22  substantial evidence.
23          In this case, Dr. Singh's medical capacity
24  assessment rendered on July 24, 2017 at pages 407 through 412
25  of the administrative transcript, one would have to

1   acknowledge is extremely limited -- limiting.  He notes an
2   extreme limitation of virtually all of the areas addressed in
3   that, in that questionnaire.  As the administrative law judge
4   noted, the opinions and the serious limitations reflected are
5   at odds with Dr. Singh's own treatment notes.  At page 424,
6   Dr. Singh notes that plaintiff's memory is intact, attention
7   and concentration are intact, at page 460 -- 425, executive
8   functioning intact, again at page 428, memory intact,
9   judgment intact, insight intact, attention and concentration
10  intact.  Again, at page 437, memory intact, reasoning, normal
11  reasoning, attention and concentration intact, executive
12  functioning intact.  As the administrative law judge noted,
13  Dr. Singh at one point in July of 2017 at page 431 assigned a
14  Global Assessment of Functioning, or GAF score, of 60.  Under
15  the DSM-IV, which of course is no longer in use, GAF of 60
16  signifies moderate symptoms or moderate difficulty in social,
17  occupational, or school functioning.  Certainly seems to be
18  inconsistent with Dr. Singh's very limiting report.  At 431,
19  it was also noted that, by Dr. Singh that plaintiff was doing
20  well on Zoloft.  The administrative law judge considered that
21  plaintiff was only examined twice by Dr. Singh prior to
22  rendering his opinion.  The administrative -- the activities
23  of daily living are not as limiting as plaintiff's testimony.
24  The administrative law judge noted that plaintiff was able to
25  drive to Georgia in 2015, that appears at 375 of the

1   administrative transcript, and in May of 2016 was noted to be
2   driving, that's at page 365 of the administrative transcript.
3   The administrative law judge did consider Dr. Singh is a
4   specialist but concluded that his opinions are not supported.
5   I find that the treatment of Dr. Singh's opinions was
6   adequately explained and supported by substantial evidence.
7              Turning to Dr. Long, Dr. Long -- I'll call her
8   Dr. McLean Long, I'm not sure if that's accurate, found based
9   on her examination of the plaintiff at page 271 that there is
10  no limitation in the claimant's ability to sit, stand, climb,
11  push, pull, or carry heavy objects.  She did go on to note
12  that there is a mild limitation from activities requiring
13  mild or greater exertion because of her cardiac history.  The
14  administrative law judge rejected that second sentence
15  because it was vague, not supported, and it did not provide
16  any functional information.  The first sentence clearly
17  supports a medium, medium RFC.  The RFC of course being
18  defined as the range of tasks she is capable of performing
19  notwithstanding the impairments at issue, 20 C.F.R. Sections
20  404.1545 and 416.945, *Tankisi v. Commissioner of Social*
21  *Security*, 521 F.App'x 29.  An RFC has to be informed by
22  consideration of only the medical, relevant medical and other
23  evidence.  I note also once again that it is plaintiff's
24  burden to establish her limitations up through step four and
25  that includes at the RFC level.  Dr. McLean Long's opinion

1   was discussed at pages 19 and 20 of the administrative law
2   judge's decision, portion of it were rejected.  I find that
3   the administrative law judge's treatment of Dr. McLean Long's
4   opinion was supported by substantial evidence.
5             So again, coming back to the residual functional
6   capacity and plaintiff's burden to establish her capacity,
7   the mere fact that she was working in a sedentary position
8   previously does not necessarily mean she is incapable of
9   performing at the medium work exertional level.  Medium work
10  of course under SSR 83-10 is defined as lifting no more than
11  50 pounds at a time with frequent lifting or carrying of
12  objects weighing up to 25 pounds.  The full range of medium
13  work requires standing or walking off and on for a period of
14  approximately eight -- six hours in an eight-hour workday in
15  order to meet the requirements of frequent lifting or
16  carrying of objects up to 25 pounds, and it goes on to make
17  additional observations regarding medium work.  The ability
18  to perform medium work in this case is supported by the
19  consultative examination of Dr. McLean Long.  There's no
20  evidence of subsequent deterioration.  The administrative law
21  judge did note there was stenting but, as the Commissioner
22  has argued, the evidence concerning plaintiff's heart
23  condition following the stenting does not support a finding
24  of deterioration.  Physical exams of the plaintiff, as the
25  administrative law judge notes, were largely unremarkable.

1  The mental portion of the RFC finding is supported as I
2  indicated before by Dr. Antiaris' opinion, and Dr. Singh's
3  medical source statement was properly rejected.
4           The Commissioner -- the plaintiff has argued that
5  the RFC did not account for the moderate limitations found as
6  part of the step three analysis at page 15 of the
7  administrative transcript but the step three and the
8  so-called B criterion drops out and is not relevant to the
9  RFC finding once the step three analysis has been concluded.
10          In terms of the gap, plaintiff alleges that there
11 is a gap in the record once Dr. Singh's opinion was rejected,
12 but there is also the consultative examination of
13 Dr. Antiaris and the nonexamining opinions of Dr. Ferrin
14 which supply the required substantial evidence concerning
15 plaintiff's mental capacity portion of the RFC.
16          So I think I've addressed all of the arguments that
17 were raised by the plaintiff.  I conclude that proper legal
18 principles were applied, that the treatment of the various
19 medical opinions was supported by substantial evidence, and
20 that the resulting determination is also supported by
21 substantial evidence, so I will grant judgment on the
22 pleadings to the defendant, dismissing plaintiff's complaint.
23          Once again, thank you both for excellent
24 presentations, I wish you well, stay safe.  Thank you.
25          MS. GOTTESMAN:  Thank you, your Honor.

1      MR. PARRINGTON:  Thank you, your Honor.
2           (Proceedings Adjourned, 12:05 p.m.)

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5   Official Realtime Court Reporter, in and for the

6   United States District Court for the Northern

7   District of New York, DO HEREBY CERTIFY that

8   pursuant to Section 753, Title 28, United States

9   Code, that the foregoing is a true and correct

10  transcript of the stenographically reported

11  proceedings held in the above-entitled matter and

12  that the transcript page format is in conformance

13  with the regulations of the Judicial Conference of

14  the United States.

15

16                      Dated this 6th day of May, 2020.

17

18

19                      /S/ JODI L. HIBBARD

20                      JODI L. HIBBARD, RPR, CRR, CSR
                        Official U.S. Court Reporter
21

22

23

24

25